IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DONALD MATTHEW KINMAN,     )
d/b/a LONESOME WHISTLE RECORDS,  )
       )
    Plaintiff,     )     NO. 3:18-cv-00809
       )     JUDGE RICHARDSON
v.     )
       )
ZACHARY BURNOP and 3B FILMZ,    )
INC.,     )
       )
    Defendant.     )

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff's Motion for Default Judgment against Defendant 3B Filmz, Inc. (Doc. No. 25), to which no response has been filed. Defendant 3B Filmz, Inc. ("3BF") has failed to employ counsel, as admonished by the magistrate judge (Doc. No. 15), and therefore it has failed to plead or otherwise defend this action. Default was entered against 3BF by the Clerk of Court on October 31, 2019, pursuant to Fed. R. Civ. P. 55(a). (Doc. No. 23).

**FACTUAL BACKGROUND[1]**

Plaintiff is a musician and is the host, author, developer and owner of a documentary show now called "Back Roads of America with Matt Kinman."[2] Plaintiff's show focuses on traditional craftsmen and craftswomen, musicians, story tellers, moonshiners, and more. Plaintiff's goal is "to

---

[1] The facts as stated here are taken from Plaintiff's Declaration (Doc. No. 25-2), which is unrebutted, and from the Complaint (Doc. No. 1), accepted as true for purposes of this Motion. *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (holding that entry of default "conclusively establishes every factual predicate of a claim for relief.").

[2] The show was formerly called "Back Porch of America with Matt Kinman."

document these stories so that these ways of life are not lost for future generations." On May 1, 2018, Plaintiff registered the copyright in the pre-2018 recorded footage of his program with the U.S. Copyright Office, Registration Number PAu 3-901-036. (Doc. No. 25-3).

Kinman, through his company, Lonesome Whistle Records, entered into a Production Agreement ("the Agreement") with 3BF on January 12, 2018, for the engagement of 3BF's services to produce and direct the first season of a television series called "Back Porch of America." ("the Project") (Doc. No. 25-6). 3BF, through Defendant Burnop, represented to Plaintiff that it had the skill, experience and connections to get the Project picked up for distribution and that 3BF and Burnop would only work "for hire" and not take any ownership of the Project. Plaintiff claims that this representation was false. In connection with the Project, Plaintiff provided 3BF with the only hard drive of his copyrighted pre-2018 footage for the Project. In addition, as part of the Project, Defendants conducted 12 days of filming in February 2018, under Plaintiff's supervision. The 2018 footage is more specifically described in Plaintiff's Complaint at ¶ 47.

In March of 2018, Plaintiff terminated the Agreement with 3BF because of Burnop's and 3BF's lack of professional experience. Plaintiff requested the return of all pre-2018 and 2018 footage and reimbursement for all monies not spent on the production.

Under the Agreement,[3] Defendants' fees were to be paid on a schedule based on the production budget. In paragraph 5(b) of the Agreement, the parties agreed that "all Project materials created by or on behalf of 3BF (and/or its designee) in connection with the direction,

---

[3] Although the Project Budget (Doc. No. 1-2) and Proof of Payments by Plaintiff to Defendants (Doc. No. 1-3) have been filed, the Court has not found in the record copies of Exhibits A (additional key terms and conditions) and B (description of the Project) referenced in the Agreement.

preparation, or production of the Project shall continue to be owned by 3BF until [Plaintiff] has paid 3BF all fees and expenses set forth in the Project Budget." (Doc. No. 25-6 at 1). Plaintiff contends and has provided proof that he made all required payments under the Agreement (Doc. No. 1-3), but 3BF has not returned all the raw footage to Plaintiff and has wrongfully advertised and tried to sell the Project online. (Doc. No. 25-2 at ¶¶ 11 and 56-58).

Plaintiff alleges copyright infringement as to both the old footage he sent to 3BF and as to the new footage (ten new episodes commissioned by Plaintiff). Although the 2018 footage is not specifically registered, Plaintiff asserts (and it has not been disputed by 3BF) that he is entitled to copyright protection for the 2018 footage as well.

Plaintiff also alleges fraud by Defendants in the inducement of the Agreement, misrepresentation, violation of the Tennessee Consumer Protection Act ("TCPA"),[4] breaches of contract and of good faith and fair dealing, conversion and civil theft, tortious interference with business, unjust enrichment, and "claim and delivery." Plaintiff seeks compensatory, statutory, and punitive damages and injunctive and declaratory relief.

## PROCEDURAL BACKGROUND

Defendant 3BF was properly served with a copy of the Summons and Complaint on October 5, 2018. (Doc. No. 7). 3BF failed to employ counsel and failed to plead or otherwise defend this action. The Clerk entered default against 3BF. (Doc. No. 23). Plaintiff filed his Motion for Default Judgment against 3BF on November 4, 2019. (Doc. No. 25).[5]

---

[4] Alternatively, and presumably because The Agreement provides that it will be governed by the law of North Carolina, Plaintiff alleges violation of the North Carolina Unfair and Deceptive Trade Practices Act.

[5] Although 3BF has filed no Response to Plaintiff's Motion for Default Judgment, Defendant Burnop filed a letter to the Court asking that it deny the "Default of Judgement" (sic) and claiming

## LEGAL STANDARD

In order to obtain a default judgment under Federal Rule of Civil Procedure 55, a plaintiff must have first secured an entry of default from the Clerk of Court, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R. Civ. P. 55(a). Upon entry of default, if a plaintiff's claim is not for a sum certain, he or she "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

Following an entry of default, the complaint's well-pleaded allegations pertaining to liability are taken as true. *Sands v. Fan Fest News, LLC,* No. 3:18-cv-01353, 2019 WL 6715114, at * 2 (M.D. Tenn. Dec. 10, 2019). However, the default is not considered an admission of damages. *Id.*; *Vesligaj v. Peterson,* 331 F. App'x 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved."). In order to determine damages, the court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 9–cv–193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); *see also* Fed. R. Civ. P. 55(b)(2) (A district court "*may* conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.") (emphasis added)); *Vesligaj*, 331 F. App'x at 354 (Rule 55(b)(2), "allows but does not require the district court to conduct an evidentiary hearing.").

## COPYRIGHT INFRINGEMENT

---

that he never misrepresented himself, defrauded anyone, or admitted fault to Mr. Kinman. (Doc. No. 24).

A. Liability

The Clerk of Court has entered default against Defendant. (Doc. No. 23). Therefore, the Court accepts as true the allegations set forth in the Complaint. The entry of default conclusively establishes every factual predicate of a claim for relief. *Malibu Media, LLC v. Schelling,* 31 F. Supp. 3d 910, 911 (E.D. Mich. 2014). The unchallenged allegations set forth in the Complaint sufficiently state a claim against 3BF for copyright infringement. Therefore, default judgment as to liability is appropriate.

To establish a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004)). The first prong, which tests the originality and non-functionality of the work, is presumptively established by the copyright registration. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). "The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Id.*

The Court finds that Plaintiff has adequately established entitlement to copyright protection. First, Plaintiff has a valid copyright for the pre-2018 footage, as presumptively established (without any subsequent rebuttal) by the registration attached to the Complaint. (Doc. No. 1-1). Secondly, Plaintiff contends (without subsequent rebuttal) that he is the copyright holder of the 2018 footage as author of the work; that is, as the party who actually created the work, who translated an idea into a fixed, tangible expression entitled to copyright protection. 17 U.S.C. § 201(a). Plaintiff was the sole financier of the Project (2018 footage), and at all times relevant herein, Plaintiff has had control and final approval of every aspect of the Project. Moreover,

Plaintiff has presented proof of his payments to 3BF for its work, and pursuant to the Agreement, Plaintiff owns the Project. The Court finds that Plaintiff is the copyright holder of the 2018 footage as well.

Plaintiff also stated in his Affidavit (Doc. No. 25-1) that 3BF violated his exclusive rights by wrongfully retaining both old and new footage of his copyrighted material.[6] *See* 17 U.S.C. § 501(a). Plaintiff asserted that Defendants publicly displayed one of the interviews for his Project on YouTube without his permission, attempted to advertise and sell his Project on the internet without his consent, and posted footage from his copyrighted material on the Internet. (*Id*. and Doc. No. 25-2). As noted above, 3BF has filed nothing at all to rebut these allegations. The Court finds that Plaintiff has established 3BF's liability on the copyright infringement claims (Counts I and II).

B. Injunctive Relief

Under federal law, the Court may grant temporary and final injunctions for copyright infringement "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Copyright Act grants the Court broad powers to enjoin infringement. *Superhype Pub., Inc. v. Vasiliou*, 838 F. Supp. 1220, 1226 (S.D. Ohio 1993).

Plaintiff asks the Court to permanently enjoin 3BF from use of the name of or any footage from Plaintiff's copyrighted works and to require the return of all footage to Plaintiff. (Doc. No. 25 at 4). A plaintiff seeking a permanent injunction must satisfy a four-factor test. *Brittney Gobble Photography, LLC v. Wenn Ltd.*, No. 3:16-cv-306, 2019 WL 2446997, at * 9 (E.D. Tenn. Feb. 19,

---

[6] Plaintiff represented in his Declaration that, since the filing of the Complaint, 3BF has returned the pre-2018 footage and some, but not all, of the drives of the 2018 footage. (Doc. No. 25-2 at ¶ 11). The Complaint seems to have alleged that, at that time, none of this footage had been turned over to him. (Doc. No. 1 at ¶ 50).

2019). Plaintiff must establish that: (1) he has suffered irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) it is in the public's interest to issue the injunction. *Id*. Plaintiff asserts that Defendant has displayed on YouTube one of the interviews of Plaintiff's Project (paid for by Plaintiff) and that Defendant has failed to return the footage to Plaintiff as discussed above. (Doc. No. 25-2 at 13). (Doc. No. 1 at ¶¶ 50-52). Plaintiff also contends that 3BF tried to advertise and sell Plaintiff's Project on the internet without Plaintiff's consent. (Doc. No. 25-2 at 12-13).

The allegations of the Complaint, which now are deemed established, state that Defendant's violation of Plaintiff's exclusive rights as the copyright owner of the pre-2018 footage has infringed Plaintiff's right to reproduce, create derivative works, perform the work publicly, and display the work publicly and, therefore, Plaintiff has been irreparably harmed. (Doc. No. 1 at ¶¶ 57-59). The Complaint also asserts that Defendant's failure to provide Plaintiff with the 2018 footage has caused Plaintiff irreparable harm by depriving him of his opportunity to create derivative works and to publish and monetize his Project. (*Id*. at ¶¶ 79-80). Plaintiff contends that Defendants' actions damage and threaten to damage Plaintiff's reputation, goodwill, and ability to reach customers, all injuries for which he cannot adequately be compensated by monetary damages. (*Id*. at ¶ 141). He claims that, unless restrained, Defendant's actions will continue to cause irreparable injury to Plaintiff. (*Id*. at ¶ 142).

The Court finds that Plaintiff has sufficiently shown, via these established allegations, that he will suffer irreparable injury, absent injunctive relief. Because the copyrights in these works belong to Plaintiff and 3BF has filed nothing to rebut Plaintiff's allegations, a remedy in equity is warranted. It is in the public interest to uphold copyrights and deter infringement. Accordingly,

7

3BF will be permanently enjoined from using, for any reason, Plaintiff's pre-2018 footage or 2018 footage prepared for Plaintiff's Project, including any advertisement or other marketing-related material derived from Plaintiff's works. In addition, 3BF will be ordered to return to Plaintiff any and all footage of the Project, including both the pre-2018 footage and the 2018 footage.

C. Damages

Plaintiff requests statutory damages and attorneys' fees under 17 U.S.C. § 504(c)(2). The Court is not free to enter judgment in the amount requested by the Plaintiff without proof. Rather, as noted above, where damages are unliquidated, a default admits only the defaulting party's liability, and the amount of damages must be proved. *Malibu Media*, 31 F. Supp. 3d at 911.

The Court finds that it is appropriate to decide this matter of copyright infringement damages based on the written record in light of the fact that Defendant 3BF has failed to appear or otherwise defend itself in this action. *See Sony/ATV Music Publishing LLC v. 1729172 Ontario, Inc.*, No. 14-cv-1929, 2018 WL 4007537, at *6 (M.D. Tenn. Aug. 20, 2018) ("An inquest on paper, in lieu of a hearing, is particularly appropriate when the issue is the amount of statutory damages."); *Hewlett-Packard Co. v. Capital City Micro, Inc.*, No. 4-cv-0779, 2006 WL 2503623, at *5 (M.D. Tenn. Aug. 28, 2006); *Disney Enters., Inc. v. Farmer*, 427 F. Supp. 2d 807, 814 (E.D. Tenn. 2006) (granting default judgment and permanent injunction and awarding statutory damages and attorney's fees and costs when defendant failed to defend the action and the district court concluded that no valid purpose would be served by requiring an evidentiary hearing).[7]

---

[7] "District courts have wide discretion in setting damages within the statutory range set forth in § 504(c)(1)." *King Records, Inc. v. Bennett,* 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006). This is because the statutory scheme is "designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement." *Johnson v. Jones,* 149 F.3d 494, 504 (6th Cir. 1998).

The Copyright Act provides for statutory damages in a "sum of not less than $750 or more than $30,000 as the court considers just" for each work for which a copyright has been infringed. 17 U.S.C. § 504(c)(1). Additionally, the Copyright Act authorizes the Court to increase the statutory damages award to any amount up to $150,000 for each work involved, if the infringement was committed willfully. 17 U.S.C. § 504(c)(2).

In determining statutory damages, courts may consider several factors, including "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *King Records*, 438 F. Supp. 2d at 853. A court may also consider the deterrent effect on the infringer and third parties. *Johnson*, 149 F.3d at 504.

Based upon the unrebutted facts alleged, the Court finds that 3BF's copyright infringement was willful.[8] Where a defendant has defaulted, willful copyright infringement is proven. *Microsoft Corp. v. McGee,* 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007); *Sony/ATV Music Publishing, LLC v. 1729172 Ontario, Inc.*, No. 3:14-cv-1929, 2018 WL 4007537, at * 7-8 (M.D. Tenn. Aug. 20, 2018). Plaintiff claims $150,000 in damages as a result of Defendants' conduct. (Doc. No. 25-2 at 18). Plaintiff has offered evidence that Defendants infringed his copyrights after knowing that he was claiming ownership thereof. Moreover, damages for willful infringement act as a deterrent for future infringement.

The Court views the Complaint as alleging infringement in two works, Plaintiff's pre-2018 footage (more than ten interviews) and Plaintiff's 2018 footage (at least eight separate days of raw

---

[8] For example, Plaintiff has provided evidence that 3BF tried to advertise and sell his Project on the Internet without Plaintiff's consent and posted one of Plaintiff's interviews on YouTube without Plaintiff's consent. (Doc. No. 25-2 at 12-13).

footage). (Doc. No. 1 at 8-10; *see also* Doc. No. 26 at 9). Accordingly, the Court awards Plaintiff

$150,000 per work in statutory damages against 3BF, for a total of $300,000.[9] Judgment shall be

entered for Plaintiff against 3BF on his copyright infringement claim.

D. Attorney's Fees and Costs

In addition to statutory damages, Plaintiff seeks an award of costs and attorney's fees. The

Copyright Act provides that the district court, in its discretion, may award costs, including

reasonable attorneys' fees, to the prevailing party in civil actions. *Bridgeport Music, Inc. v.*

*Dimension Films*, 410 F.3d 792, 807 (6th Cir. 2005) (citing 17 U.S.C. § 505). In determining

whether costs or attorneys' fees are warranted, "a court may consider (1) whether a complex or

novel issue justified the litigation of the case, (2) whether the defendant made an attempt to avoid

the infringement, and (3) whether the infringement was innocent." *Disney Enters.*, 427 F. Supp.

2d at 817. Although this case does not involve an especially complex or novel legal issue (because

the factual allegations in the Complaint are taken as true), Defendant is deemed to have willfully

infringed upon Plaintiff's copyright. There is no evidence before the Court that 3BF attempted to

avoid the infringement. Therefore, the infringement was not innocent, and Plaintiff is entitled to

costs and fees.

Plaintiff has not identified a specific amount of attorney's fees and costs for which he seeks

relief. Therefore, Plaintiff shall file, by February 21, 2020, a Motion for Attorney's Fees and Costs

---

[9] Although Plaintiff asks for punitive damages, the cases are clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action. Common law punitive damages cannot be recovered under the Copyright Act. *Curcio Webb L.L.C. v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1198 (S.D. Ohio 2005); *Viacom Int'l Inc. v. Youtube, Inc.*, 540 F. Supp. 2d 461, 464 (S.D. N.Y. 2008).

with supporting documentation. To the extent that those fees and costs are found to be reasonable, the Court will award them at that time.

## PLAINTIFF'S STATE-LAW CLAIMS

Plaintiff also seeks money damages for fraud in the inducement, misrepresentation, violation of the TCPA (or, alternatively, of North Carolina law), breach of contract, breach of the duty of good faith and fair dealing, conversion, tortious interference with business relations, unjust enrichment, and "claim and delivery." (Doc. No. 1).

Having granted default judgment on Plaintiff's copyright claim (over which the Court had original jurisdiction) and without addressing the merits or lack thereof of Plaintiff's state law claims, the Court, in its discretion and pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant 3BF. *See Carpenter v. Lane College,* Case No. 2:17-cv-2672, 2019 WL 845275, at * 4 (W.D. Tenn. Feb. 6, 2019) (having granted summary judgment on plaintiff's sole federal claim, court followed the "usual Sixth Circuit practice" and declined to exercise supplemental jurisdiction over plaintiff's remaining state law claims); *Stevens v. Gooch,* 48 F. Supp. 3d 992, 1007 (E.D. Ky 2014) (in usual case in which all federal law claims have been eliminated before trial, balance of factors point toward declining to exercise jurisdiction over remaining state-law claims); *Martinez-Rodriguez v. Giles,* 391 F. Supp. 3d 985, 1000-01 (D. Idaho 2019) (after granting summary judgment on plaintiffs' federal claims, court "no longer has federal question jurisdiction, and, in turn, supplemental jurisdiction over any state law claims dissolves.")

Plaintiff's state law claims will be dismissed without prejudice.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE